IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| CASSANDRA BULLOCK, | |
| Plaintiff, | |
| v. | Civil Action Number 3:05CV697 |
| REHRIG INTERNATIONAL, INC., | |
| Defendant. | |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant Rehrig International, Inc.'s ("Rehrig") Motion for Summary Judgment. For the reasons to follow, Defendant's Motion for Summary Judgment is hereby GRANTED.

**I. Background**

Rehrig manufactures shopping carts and material handling equipment at its Richmond, Virginia plant. Pl. Dep. at 27. Plaintiff, Cassandra Bullock worked in various departments at Rehrig, including a supervisory position in the material handling department. Id. at 27–28.

During the work day, Plaintiff interacted with many co-workers, including Linwood Alston, who delivered parts to the assembly departments by forklift. Id. at 28–29, 101. Plaintiff claims she had been having problems with Alston since August 2004. Alston had been picking on Plaintiff and calling her names. On one occasion, Alston drove by Plaintiff's work area singing a song using

words such as: b----h and n—rs.[1]  Pl. Ex. 6.  On another occasion, Plaintiff had placed some chassis in the middle of an entrance, because she wanted to find out where to put them.  Alston allegedly stated "move that s—t out of the way."  Pl. Ex. 6.

On December 23, 2004, Plaintiff was working as a quality control inspector, inspecting products for material or manufacturing defects. Pl. Dep. at 28, 100.  Plaintiff's co-worker, Henry Thomas was helping her move some heavy items.  Alston was in the area, when Thomas asked him to use his forklift, he responded, "hell, no, you can't use my forklift to help that b—h" Id. at 61, Pl. Ex. 6.  Plaintiff approached Alston and exclaimed "you ain't going to keep calling me out of my name." Pl. Dep. at 61.  Alston invited Plaintiff to accompany him outside. Id. at 61–62.  When Alston turned to walk outside with Plaintiff, Plaintiff grabbed Alston around the neck and scratched him with her fingernails.  Id. at 62, 65–66.

Plaintiff received a copy of Rehrig's Employee Manual. Pl. Dep. 16.  Rehrig's policy states:

Examples of harassment prohibited by this policy include but are not limited to:
- Unwelcome sexual flirtation, advances or proposition
- Sexually offensive remarks, as well as offensive remarks related to an individual's age, race, gender, color, religion, national origin, or disability

.   .   .

If you believe that you are being subjected to harassment, you must:
- Promptly report the incident to your manager, facilitator, or a member of Human Resources.  If you are uncomfortable reporting to your manager, facilitator, or a member of Human Resources, report the conduct to another manager, President, or Vice President you feel comfortable with.
- If additional incidents occur, immediately report them to one of the above resources.

Any reported incident will be promptly investigated.  Actions taken to resolve complaints will be handled as confidentially as possible, given Rehrig International's

---

[1] Specifically, Alston sang lyrics from a popular rap song, "b----hes ain't s–t, but wh–s, tricks, and n----rs."

>obligation to investigate and act upon reports of such harassment. If an incident is not reported, Rehrig International has no way to know that you believe you are the subject of harassment and cannot reasonably be expected to take action.
>
>Retaliation of any kind against an employee who reports a suspected incident of harassment is prohibited. An employee who violates the policy or retaliates against an employee in any way will be subjected to disciplinary action up to and including termination.

Rehrig Int'l, Inc. Employee Manual. Pl. Ex. 3 at 12.

After the incident, Plaintiff's manager, Heather Stolper suspended Plaintiff from work while Senior Human Resources Generalist, Monica Patsel conducted an investigation into the incident. Patsel Dep. 8.

Patsel interviewed Scott Smith, a floor supervisor to whom Plaintiff complained about Alston. Patsel Dep. 16. Smith claimed that Plaintiff complained to him about Alston around October 2004. Plaintiff did not specify the nature of Alston's behavior. She told Smith, "[Alston was] working her nerves, he needed to stop playing with her." Def. Mot. Summ. J. Ex. A. at 10. Smith allegedly had not heard of any additional complaints regarding Alston's treatment of Plaintiff. In the investigation after the incident, Smith reported to Patsel, he "thought that the behavior had stopped." Id. Smith was not a manager at Rehrig. Plaintiff admits that she did not tell any other supervisor or manager at Rehrig that she was having any problem with Alston until after the December 23, 2004 altercation. Pl. Dep. 42, 46, 48–50.

Rehrig advised Plaintiff on December 28, 2004 of her termination for violating Rehrig's company policy banning physical altercations with other employees. Pl. Dep. 21–22. After the investigation, Defendant suspended Alston for several days for his actions toward Plaintiff.

Bullock timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Within ninety (90) days of receiving a right to sue letter from the EEOC,

on October 6, 2005, Bullock filed this suit against Rehrig alleging: (1) gender discrimination under Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000(e) et seq.; (2) sexual harassment creating a hostile work environment; and (3) retaliation against her because of her complaint of discrimination. Plaintiff has since abandoned her retaliation claim. On April 5, 2006, Rehrig filed a motion for summary judgment on all counts.

## II. Standard of Review

Under Rule 56(c), a motion for summary judgment may be granted "only if the pleadings, depositions, interrogatory answers, admissions, and affidavits show 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Magill v. Gulf & W. Indus., Inc., 736 F.2d 976, 979 (4th Cir. 1984) (quoting Fed. R. Civ. P. 56(c)); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992). "Where . . . the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." United States v. Lee, 943 F.2d 366, 369 (4th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The party moving for summary judgment always bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once a motion for summary judgment is properly made and supported, the opposing party then has the burden of showing that a genuine dispute as to any material fact does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

### III. Analysis

**A.     Plaintiff's gender discrimination allegation**

As amended by the Civil Rights Act of 1991, Title VII of the Civil Rights Act of 1964 provides, it is "an unlawful employment practice for an employer . . . to discharge . . . or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C § 2000e-2(a)(1). To establish a prima facie case of gender discrimination under Title VII, Plaintiff must show: (1) that she is a member of a protected class; (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). Plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804–05 (1973)). However, "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 286 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)). Plaintiff must produce sufficient evidence upon which a fact finder could conclude that the protected trait "actually played a role in the employer's decision making process and had a determinative influence on the outcome." Hill, 354 F.3d at 286 (quoting Reeves, 530 U.S. at 141).

Plaintiff is unable to establish a direct prima facie case for gender discrimination. She admits to physically assaulting Alston in violation of Rehrig's employee policy. Plaintiff admits that Alston did not retaliate. The facts are undisputed that Plaintiff's manager, Heather Stolper decided to terminate Plaintiff's employment due to her physical attack on Alston. It is also undisputed that other employees, including male employees were discharged from employment after engaging in physical altercations. Plaintiff herself stated that she was aware of others who had engaged in physical altercations, and were fired. Plaintiff does not prove that the disciplinary action taken against her was any more severe than that taken against similarly situated employees.

Plaintiff is also unable to make an indirect prima facie case of gender discrimination. She does not dispute Rehrig's legitimate nondiscriminatory reason for her termination. Plaintiff admits to receiving Rehrig's company handbook, and to knowledge that violence in the workplace is grounds for termination. She does not rebut Rehrig's reason for her termination by showing it is unworthy of credence, and her prima facie case of gender discrimination fails as a matter of law.

**B.      Plaintiff's hostile work environment claim**

Title VII prohibits sexual harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986) (internal citation omitted). To establish sexual harassment amounting to a hostile work environment, a plaintiff must prove: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive working environment; and (4) which is imputable to the employer." Conner v. Schrod-Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000). Plaintiff is unable to satisfy each of the requirements to make a prima facie claim

for a hostile work environment.  In particular, Plaintiff's claim fails on the fourth prong, since she is unable to impute any knowledge to Defendant.

### 1. Unwelcome conduct

It is undisputed that Alston's conduct toward Plaintiff was unkind and unwelcome.  She had complained that Alston would call her names, refer to her as a "b___h" when talking to other people, and sing lyrics with profane words in her presence.  Plaintiff testified during her deposition that she believed some of Alston's behavior was in reaction to her turning him down for a date.  Alston's alleged behavior was inappropriate, and unwelcome but may not have been sufficient to make a prima facie case of gender-based hostile work environment.

### 2. Harassment based on gender

Under the second prong, Defendant contends that Plaintiff has not established proof that Alston's harassment was based on her gender.  "A trier of fact may reasonably find discrimination . . . when a female victim is harassed in such sex-specific and derogatory terms . . . as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331–32 (4th Cir. 2003) (en banc) (internal citation omitted).  In recounting her interaction with Alston to Defendant, Plaintiff alleged Alston referred to her as a "b—h," and on another occasion, sang a song with explicit lyrics degrading women in her presence.  There is no evidence that Alston sang the song with the intent to harass Plaintiff *because of her sex*.  The Plaintiff must demonstrate that the harassing conduct was not merely 'tinged with offensive sexual connotations,' but actually constituted discrimination because of her sex. Oncale v. Sundowner Offshore Svcs., Inc., 523 U.S. 75, 79, 80 (1980) (citation omitted).  The critical issue is "whether members of one sex are exposed to disadvantageous terms or conditions of employment

to which members of the other sex are not exposed." Id. at 80. Plaintiff testified that Alston tended to make inappropriate remarks to co-workers of both genders. She said that he tended to "lash out, cuss all over the place," and "call people out of their names" and that he did that to "[e]verybody, including male co-workers Henry Thomas and his own brother." Whether Alston's conduct constitutes sexual harassment based on gender to support a claim under Title VII is a fact specific inquiry that the Court need not resolve, as the Plaintiff's claim fails for other reasons.

### 3. Harassment sufficiently severe or pervasive

Assuming the incidents about which Plaintiff complains do amount to gender-motivated discrimination, Plaintiff must prove that the harassment is sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986). Plaintiff has identified a few isolated incidents that actually occurred. Plaintiff must perceive her environment to be hostile, and in addition, a "reasonable person" in her position must also find that the work environment was objectively abusive. Cox v. Rumsfeld, 369 F. Supp. 2d 748, 758 (E.D. Va. 2005). Alston's conduct was certainly childish and offensive. Regardless of the nature and extent of any harassment, Plaintiff fails to meet the fourth prong of the prima facie claim.

### 4. Whether Alston's harassment was imputable to Rehrig

Alston's harassment of Plaintiff cannot be imputed to Rehrig since Plaintiff did not follow Rehrig's complaint procedures and her Complaint to a floor supervisor did not make specific allegations about Alston's conduct. An "employer cannot be held liable for isolated remarks for its employees unless the employer 'knew or should have known of the harassment, and took no effectual action to correct the situation.'" Spicer v. Virginia, 66 F.3d 705, 710 (4th Cir. 1995)

(quoting Katz v. Doyle, 709 F.2d 251, 256 (4th Cir. 1983)). Plaintiff admits to being aware of Rehrig's harassment policy and complaint procedures. The policy provided that employees should report conduct to their own facilitator, manager, or Human Resources representative. Although Plaintiff admits in her deposition that Plaintiff's Manager, Heather Stolper and Senior Human Resources Generalist, Monica Patsel would have taken prompt action on Alston's conduct, she stated she did not request their help because she "did not want to get [Alston] in trouble." Unfortunately, Plaintiff's good nature has cost her. It is clear that had Plaintiff made a clear, formal complaint, and the company took no action, the knowledge would be imputed to the company. Plaintiff understood the system that was in place, but chose not to use it. Since Plaintiff failed to follow Rehrig's complaint procedure, Rehrig cannot be liable for Alston's behavior. See Dowdy v. North Carolina, 23 Fed. Appx. 121, 124 (4th Cir. 2001) (holding where Plaintiff told a supervisor outside of her and aggressor's chain of command in spite of the directive of the policy manual, Defendant was not liable for the aggressor's actions). After the incident, once Defendant learned of Alston's behavior, it took prompt action against him.

Although Plaintiff did not tell her supervisor or Alston's supervisor, of Alston's actions pursuant to Rehrig's policy. Instead, she told Scott Smith, a floor supervisor, that Alston was "calling her out of name." It is undisputed that Smith was a supervisor at Rehrig, however since Smith was not a supervisor to either Plaintiff or Alston, Plaintiff's complaint to Smith does not fall within Rehrig's policy. Even if Smith was a direct supervisor in accordance with Rehrig's policy, Plaintiff's vague complaint to Smith that Alston was "calling her out of name" is not enough to put the Defendant on notice that Plaintiff believed she was subject to sexual harassment. Plaintiff's claims of misconduct to Smith raised issues of what appeared to be a personal conflict, rather than

sexual harassment. Plaintiff is unable to prove the fourth prong of a prima facie case of a hostile work environment, and any alleged harassment cannot be imputed to the Defendant.

**C.     Plaintiff's Retaliation Claim**

Although Plaintiff alleged a claim for retaliation in her Complaint, she has voluntarily abandoned her claim of retaliation. Summary Judgment is hereby entered against Plaintiff on this issue.

### IV. Conclusion

Plaintiff's claims of sexual discrimination, hostile work environment, and retaliation under Title VII fail as a matter of law. Accordingly, Rehrig's Motion for Summary Judgment is hereby GRANTED. An Appropriate Order shall issue.

                                                  /s/ James R. Spencer
                                      CHIEF UNITED STATES DISTRICT JUDGE

ENTERED this   10th   day of May 2006.